# United States District Court
# Central District of California

| | |
|---|---|
| MYCOSKIE, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EBUYS, INC., doing business as SHOE METRO; and DOES 1–10, inclusive,<br><br>　　　　Defendants.<br><br>EBUYS, INC., doing business as SHOE METRO,<br><br>　　　　Third-Party Plaintiff,<br><br>　　v.<br><br>THE JAY GROUP, LTD.; and GENCO MARKETPLACE, INC.,<br><br>　　　　Third-Party Defendants. | Case № 2:16-cv-03259-ODW (SK)<br><br>**ORDER GRANTING THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [92]** |

## I. INTRODUCTION

Third-Party Plaintiff Ebuys, Inc. d/b/a Shoe Metro ("Shoe Metro") alleges that Third-Defendant Genco Marketplace, Inc. ("Genco") breached the implied warranty of title and against infringement, under Cal. Com. Code § 2312, when Genco sold Shoe Metro counterfeit shoes. Genco now moves for summary judgment alleging that Shoe Metro waived the protections under section 2312 in writing and is, therefore, barred from bringing a claim for breach of implied warranty. In response, Shoe Metro argues that (1) there are factual disputes as to whether the contract Genco attaches to its Motion for Summary Judgment is actually the contract entered into between the parties; (2) there is a triable issue of fact as to whether Shoe Metro actually assented to the contract; (3) the alleged agreement containing the waiver does not disclaim the implied warranty against infringement; and (4) the limitation on implied warranties Genco seeks to enforce is unconscionable.

For the following reasons, the Court **GRANTS** Genco's Motion for Summary Judgment.

## II. BACKGROUND

### A. Procedural Background

Plaintiff Mycoskie, LLC initiated this trademark infringement action against Shoe Metro on May 12, 2016. (Compl., ECF No. 1.) Mycoskie, the owner of a number of the TOMS Shoes trademarks ("TOMS Marks"), claimed Shoe Metro knowingly sold counterfeit shoes that infringed on the TOMS Marks. (*Id.*)

On March 1, 2017, Shoe Metro filed its Third Party Complaint against Genco and The Jay Group, Ltd. (collectively "Third-Party Defendants") alleging that Third-Party Defendants breached the implied warranty of title and against infringement by selling Shoe Metro counterfeit shoes bearing the TOMS Marks. (Third Party Compl., ECF No. 54.) Specifically, Shoe Metro alleges that when Genco sold the shoes, it impliedly guaranteed and warranted the legitimacy and authenticity of the products it sold to Shoe Metro. (*Id.*) As damages, Shoe Metro seeks its costs, expenses, and

attorneys' fees incurred in defending against Mycoskie's Complaint and in bringing its claims against Third-Party Defendants. (*Id.*) Genco answered Shoe Metro's Complaint on April 12, 2017. (Answer, ECF No. 83.)

On June 5, 2017, Mycoskie and Shoe Metro stipulated to dismiss with prejudice all of Mycoskie's claims. (*See* ECF Nos. 85, 86.) On October 30, 2017, Shoe Metro dismissed all claims against Jay Group. (ECF No. 98.) The only claim remaining in the case is Shoe Metro's breach of implied warranty claim against Genco.[1]

On July 26, 2017, Genco applied ex parte to continue the trial date and related pretrial deadlines for ninety days, and Shoe Metro opposed. (ECF Nos. 88, 90.) Genco argued that it required more time to complete discovery because Shoe Metro added it to the litigation over a year after it had commenced, and also contended that Genco's counsel had scheduling conflicts on the trial date. (ECF No. 88.) The Court continued the trial date and pretrial deadlines by a little over two months, but continued the discovery cut-off only by two weeks. (ECF No. 91.) The Court also continued the deadline for hearing motions to October 23, 2017. (*Id.*)

On September 25, 2017, Genco moved for summary judgment on all claims against Shoe Metro and set the hearing on the motion for October 23, 2017. (Mot., ECF No. 92.) On September 26, 2017, Shoe Metro applied ex parte for an order shortening time to hearing its motion to strike Genco's Motion, arguing that Genco failed to comply with the Court's Case Management Order, which required the parties to provide at least 35 days' notice for a hearing on a motion for summary judgment. (ECF No. 93.) The Court declined to strike Genco's pleading, and instead continued the hearing to allow Shoe Metro adequate time to respond. (ECF No. 96.)

---

[1] The Court has supplemental jurisdiction over Shoe Metro's state law claims pursuant to 28 U.S.C. § 1367. The Court had original jurisdiction over Mycoskie's trademark infringement claim, and therefore, it has discretion to exercise supplemental jurisdiction over the state law claims that "form part of the same case or controversy" even after the trademark claims were dismissed. 28 U.S.C. § 1367(c)(3) (providing that district courts *may* (not must) decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction).

The Court heard oral arguments from both parties regarding Genco's Motion on November 27, 2017.

**B.     Factual Background**

Genco is in the business of liquidating bulk goods for retailers, often by the pallet, and shipping those bulk goods to the secondary market resellers that purchase them. (Shoe Metro's Statement of Genuine Disputes of Material Fact ("SGDMF") 1, ECF No. 97-3.) Genco had agreements with merchants like Amazon, Costco, CVS, Home Depot, Kohls, Sears/Kmart, Staples, and Walgreens (the "Suppliers") to purchase returned items, sight unseen, and then resell those goods at a fraction of their wholesale value to companies who sell the goods on the secondary market ("Salvagers"). (*Id*.) Shoe Metro is a Salvager and sells the returned goods to consumers at a greatly discounted price. (*Id*.)

As a prerequisite to purchasing any goods, salvaged or otherwise, Genco requires Salvagers to agree to a standard set of terms and conditions contained in Genco's Salvager Liquidation Agreement. (*Id*. at 2.) This is usually done with a "click through" on Genco's website during the initial registration process. (*Id*.) Shoe Metro first registered as a Genco customer on January 31, 2013. (*Id*. at 3.) Genco claims that the version of its terms and conditions Shoe Metro agreed to when it registered (the "Agreement") provided that all goods were sold "AS IS – WHERE IS" "with all faults, defects or imperfections." (*Id*. at 4.) According to Genco, this language is sufficient to constitute a waiver of the implied warranty against infringement.

### III.     LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact

might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Under the California Commercial Code "*[u]nless otherwise agreed* a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer a who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications." Cal. Com. Code § 2312(3) (emphasis added). In order to establish its claim, Shoe Metro must show that: (1) Genco was a merchant regularly dealing in goods of the kind; (2) the goods were subject to a rightful infringement claim of a third party; (3) Shoe Metro did not furnish specifications to Genco; and (4) the parties did not form another agreement. *See Phoenix Solutions, Inc. v. Sony Elec., Inc.*, 637 F. Supp. 2d 683, 693 (N.D. Cal. 2009).

### IV. DISCUSSION

Shoe Metro advances the following arguments in opposition to Genco's Motion for Summary Judgment: (1) Genco should be precluded from relying on the Agreement because it failed to produce that document during discovery; (2) it is a disputed fact as to whether the Agreement attached to Genco's Motion reflects Genco's terms and conditions as of January 31, 2013; (3) there is a dispute as to whether Shoe Metro assented to the Agreement; (4) the Agreement does not adequately disclaim the implied warranty against infringement; and (5) Genco's

proposed interpretation of the Agreement is unconscionable. The Court addresses each argument in turn.

**A.    Genco's Production of the Agreement**

Shoe Metro argues that the Court should bar Genco from relying on the Agreement because it failed to produce that document in discovery.[2] Genco produced the Agreement on September 1, 2017, after the August 14, 2017, discovery cut-off. (Genco's Response to Shoe Metro's Statement of Add'l Mat. Facts 5, ECF No. 99-2.) Genco claims that its failure to produce the Agreement was harmless and was neither willful nor in bad faith. (Reply 3–4, ECF No. 99.)

Under Federal Rule of Civil Procedure 37(c), if a party fails to provide information in their disclosures or in response to requests for production, that party is not allowed to use that information to supply evidence on a motion, unless the failure was substantially justified or is harmless. When exclusion would amount to dismissal of a claim or defense (as would be the case here), then in addition to the harmlessness inquiry, the Court must to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and whether a lesser sanction would suffice. *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

Genco argues that its late production of the Agreement is harmless because it had previously disclosed to Shoe Metro the existence of the Agreement through its disclosures and the terms contained therein through its responses to interrogatories. (Reply 3–4.) Genco also claims that it identified the relevant legal theory—that Shoe Metro's claim had been waived based on the terms and conditions of the Agreement— on numerous occasions, including at the initial Rule 26 conference, during multiple settlement conversations, in numerous emails, and at the parties' mediation. (*Id.* at 4.) Genco also produced various iterations of the Agreement to Shoe Metro throughout the discovery period while it continued to search its records for the Agreement itself

---

[2] Shoe Metro also lodges evidentiary objections to Genco's summary-judgment evidence on the same grounds. (ECF No. 97-5.) For the reasons discussed in this section, the Court **OVERRULES** those objections.

(i.e. the active version on January 31, 2013). (*Id.* at 5.) Genco also claims that Shoe Metro was aware and impliedly agreed to Genco's late production of the Agreement, because Shoe Metro did not object to the fact or timing of Genco's rolling document production. (*Id.*)

The Court finds that Genco's late production of the Agreement was harmless. The most persuasive facts in support of this conclusion are: (1) Genco's initial disclosures identifying the "standard terms and conditions documents, including standard Salvager Liquidation Agreement" and "Terms and conditions [Shoe Metro] agreed to in various transactions with Genco" (ECF 97-4, Ex. A); (2) Genco's Answer which includes an affirmative defense for express disclaimer of warranties by agreement, putting Shoe Metro on notice of Genco's defense (Answer 5, ECF No. 83); (3) that Genco identified the relevant disclaimed language from another iteration of the Salvager Liquidation Agreement to Shoe Metro via email in June 2017 (ECF No. 97-4, Ex. B); and (4) Genco identifying the relevant disclaimer language in the Agreement in its interrogatory responses, in which it explained that Shoe Metro agreed to terms and conditions that Genco's products are provided on an "as is," "where is," basis "with all faults" and "without representations or warranties of any kind whatsoever." (ECF No. 99-1, Ex. H at 14.)

Genco also claims that its late production of the Agreement was not willful or in bad faith, because it was forced to participate in discovery and defend itself in this litigation under a tight timeframe and prepared the document production as quickly as it was able. (Decl. of Timothy Gorry ("Gorry Decl.") ¶¶ 2, 11, 12, 16, ECF No. 99-1.) This position is consistent with the arguments Genco presented to the Court in its earlier request for a three-month extension of the discovery deadline, in which Genco argued that it was impossible to complete discovery before the previous deadline of July 31, 2017. (ECF No. 88.) Shoe Metro vigorously opposed Genco's application, claiming that there was no need for an extension. (ECF No. 90.)

Because Genco disclosed the relevant disclaimer language multiple times

during the course of discovery and provides sufficient support for its claim that the late production was not willful or in bad faith, the Court will not preclude Genco from relying on the Agreement in support of its Motion for Summary Judgment.[3]

**B. Whether the Agreement Reflects the Terms and Conditions as of January 31, 2013**

Shoe Metro argues that there is a triable issue of fact as to whether the Agreement reflects the terms and conditions that Shoe Metro allegedly assented to when it registered as a Genco customer in January 31, 2013. (Opp'n 7.) However, Genco's evidence sufficiently establishes that the terms and conditions were in place at the time Shoe Metro registered as a Genco customer.

In support of Genco's Motion for Summary Judgment, Genco attaches the declaration of Matt Thompson, a client service specialist for Genco. (Decl. of Matt Thompson ("Thompson Decl."), ECF No. 92-2.) Thompson testifies to the following:

- Because Genco is in the business of purchasing customer returns from the Suppliers, sight unseen, in massive quantities, it is unable to inspect each product prior to selling and shipping them to Salvagers. (*Id.* ¶¶ 4–6.)
- Therefore, Genco requires the Salvagers to accept all goods sold "As is-Where is" with a waiver of warranties, express and implied. (*Id.* ¶ 6.)
- "As a prerequisite to purchasing any goods, salvaged or otherwise, from Genco, Salvagers are required to agree to a standard set of terms of conditions of sale prior to even bidding on any goods." (*Id.* ¶ 7.)
- Salvagers usually agree to the terms and conditions via a "click through" on Genco's website during the initial registration process, but it can also be accomplished through the execution of a written agreement that

---

[3] Shoe Metro also claims that Genco should be estopped from relying on the Agreement, which contains a permissive arbitration clause, because Genco's late production of the Agreement resulted in Shoe Metro being prevented from moving to compel arbitration. (Opp'n 6–7.) This argument is weak, at best, because Shoe Metro selected this forum to bring its claims against Genco, so it impliedly decided against seeking arbitration. *See Samson v. Nama Holdings, LLC*, No. CV-09-1433-MMM-PJW, 2009 WL 10674355, at *3 (C.D. Cal. May 13, 2009) (finding that a party can waive the right to arbitrate by knowingly "acting inconsistently with that right," such as choosing litigation over arbitration).

contains identical terms and conditions as are on the website. (*Id.*)
- Shoe Metro first registered as a Genco customer on January 31, 2013, and in order to do so, Shoe Metro had to review and accept Genco's standard terms and conditions. (*Id.* ¶ 8.)
- The terms and conditions in effect in 2013 are attached as Exhibit A, i.e. the Agreement. (*Id.* ¶ 9.)
- When Shoe Metro registered, it acknowledged that it had read and accepted Genco's terms and conditions, by physically clicking an "Accept" option. When the Shoe Metro employee clicked "Accept," Genco's Member ID system captured that acknowledgement and cleared Shoe Metro as a client who could bid on liquidated merchandise on Genco's website. (*Id.* ¶ 14.)
- A copy of the screen capture of the Member ID confirming Shoe Metro's acceptance of the terms and conditions is attached as Exhibit B.[4] (*Id.*)

Shoe Metro attempts to create a factual issue using the testimony from its co-founder and CEO, David Duong. (Decl. of David Duong ("Duong Decl."), ECF No. 97-2.) Duong testifies to the following:

- "Shoe Metro does not have any records reflecting its registration as a customer on Genco's website on or around January 31, 2013. To be clear, I am not saying that Shoe Metro did not register as a customer for Genco's on or around that date, but Shoe Metro does not have any record of doing so or who at Shoe Metro completed the registration. It is not Shoe Metro's business practice to maintain any such records of registration." (*Id.* ¶ 4.)
- While "it is Shoe Metro's business practice to maintain terms and conditions of sale governing its transaction with liquidators such as Genco," "Shoe Metro does not have in its records any documents reflecting terms and conditions it purportedly agreed to or accepted in the course of registering . . . on or around January 31, 2013." (*Id.* ¶ 5.)
- Neither Duong nor "Shoe Metro [] as an institution, has any knowledge

---

[4] Thompson also testifies that Shoe Metro accepted terms and conditions with similar disclaimers in 2014 and 2016. (Thompson Decl. ¶¶ 15, 16.) Shoe Metro objects to this section of Thompson's Declaration and the accompanying exhibits on relevance grounds, because Genco admits that these later agreements do not directly impact the transaction at issue. (ECF No. 97-5.) Shoe Metro is correct that Genco acknowledged that these later agreements do not relate to the transaction at issue in this case. (Mot. 14.) Therefore, the Court **SUSTAINS** Shoe Metro's evidentiary objections to Exhibits C and D of Thompson's Declaration.

|   |   |
|---|---|
| 1 | or recollection of how, if at all, Genco's terms and conditions of sale were disclosed to Shoe Metro during the registration process such that it could actually review and accept them." (*Id.* ¶ 6.) |
| 2 | |
| 3 | • Neither Duong nor Shoe Metro recalls clicking an "Accept" button to acknowledge acceptance of Genco's terms and conditions of sale. (*Id.*) |
| 4 | |
| 5 | • Neither Duong nor Shoe Metro recalls the appearance of format of Genco's registration page on its website as of January 31, 2013. (*Id.*) |


1  or recollection of how, if at all, Genco's terms and conditions of sale were
2  disclosed to Shoe Metro during the registration process such that it could
   actually review and accept them." (*Id.* ¶ 6.)
3  • Neither Duong nor Shoe Metro recalls clicking an "Accept" button to
      acknowledge acceptance of Genco's terms and conditions of sale. (*Id.*)
4  
5  • Neither Duong nor Shoe Metro recalls the appearance of format of
      Genco's registration page on its website as of January 31, 2013. (*Id.*)

Shoe Metro's evidence is not sufficient to create a triable issue of fact. Genco presented evidence that in order to register as a customer, Shoe Metro had to review and accept Genco's terms and conditions in the form of the Agreement. In response, Shoe Metro does not actually contradict Genco's evidence. Instead, Shoe Metro says that it does not remember whether it did or did not agree to Genco's terms and conditions. Shoe Metro's lack of memory does not create a factual dispute.

Shoe Metro also relies on documents accessed through the Internet Archive's Wayback Machine, which archives and caches previous versions of various websites. (Decl. of Paul Bost ("Bost Decl.") ¶ 14, Exs. H, I, J, K, ECF No. 97-1.) Shoe Metro claims that it used the Wayback Machine to access versions of Genco's terms and conditions dated December 13, 2012, and March 2, 2013, and the two versions are identical and are materially different to the Agreement Genco produced. (*Id.* ¶ 14, Opp'n 8–9.) Genco objects to these documents on the grounds that they lack foundation and are irrelevant. (ECF No. 99-3.) Because Shoe Metro acknowledges that these documents are not dated January 31, 2013, the day Shoe Metro registered as a Genco customer, the Court **SUSTAINS** Genco's evidentiary objections as to these documents based on relevance grounds. Therefore, Shoe Metro has not presented any admissible evidence to show that the Agreement is different than the terms and conditions in place when it registered as Genco's customer in January 2013.

For these reasons, there is no triable issue of fact that the Agreement reflects Genco's terms and conditions in effect on January 31, 2013.

## C. Shoe Metro's Assent to the Agreement

Shoe Metro also argues that there is a triable issue of material fact as to whether it assented to the Agreement, because Genco has not produced a copy of the Agreement bearing Shoe Metro's signature or any other writing from Shoe Metro whereby it manifests its assent. (Opp'n 9.) Although Shoe Metro acknowledges that click-through agreements can be enforceable under certain circumstances, it argues that Genco is required to, but did not, show that Shoe Metro "had constructive notice of the terms of the agreement and therefore agreed to be bound by them." (Opp'n 9 (quoting *Nguyen v. Barnes & Noble, Inc.*, No. 8:12-cv-0812-JST-RNB, 2012 WL 3711081, at *3 (C.D. Cal. Aug. 28, 2012).)

Genco sufficiently established Shoe Metro's assent to the Agreement. Thompson testified that in order to register as a Genco customer, Shoe Metro necessarily had to "review and accept Genco's standard terms and conditions." (Thompson Decl. ¶ 8.) Thompson also testified that Shoe Metro had to acknowledge reading and accepting Genco's online terms and conditions by physically clicking an "Accept" button. (*Id.* ¶ 14.) Shoe Metro argues that this evidence is not sufficient to establish mutual assent, because Genco has not provided evidence of the actual verbiage on its registration webpage or how the Agreement was disclosed to Shoe Metro. (Opp'n 10.) Such details, however, are not necessary to establish mutual assent, particularly when Shoe Metro does not affirmatively contest that it actually reviewed and accepted the Agreement.

Shoe Metro presents no case where a court required a party seeking to enforce a click-through agreement to explain every detail of the acceptance process. Further, unlike the parties in the cases Shoe Metro cites in its Opposition, Shoe Metro has not presented evidence indicating that it did not, in fact, review and accept the Agreement before registering as a customer. *Cf. Nguyen*, 2012 WL 3711081, at *2 (declining to enforce arbitration agreement in a browsewrap agreement when Plaintiff presented evidence that he "did not in fact, click on the link, or read and agree to the Terms of

Use."); *Bongalis-Royer v. RJ Worldwide, LLC*, 4:14-cv-330, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015) (finding mutual assent and noting that plaintiff did not "dispute[] [d]efendant's claim or evidence that demonstrates that she clicked the box adjacent to the 'I agree' statement"); *see also Ticketmaster L.L.C. v. RMG Tech., Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007) (enforcing browsewrap agreement when defendant "d[id] not contest that it was on notice of the Terms of Use.")[5]

As explained above, Shoe Metro attempts to rebut Genco's evidence with declaration testimony from its principal that neither he nor anyone at Shoe Metro remembers the registration process or whether someone at Shoe Metro clicked the "Accept" button. (Duong Decl. ¶ 6.) This evidence is not sufficient to create a triable issue of fact as to Shoe Metro's assent.

**D. The Disclaimer of the Implied Warranty Against Infringement in the Agreement is Enforceable**

Genco claims that the following language in the Agreement is sufficient to disclaim the implied warranty against infringement:

> Salvager agrees and acknowledges that all LIQUIDATION PRODUCT sold in accordance with this Agreement is sold "**AS IS – WHERE IS**" with all faults, defects or imperfections. Prior to purchasing LIQUIDATION PRODUCT, [Genco] will allow Salvager an opportunity to inspect the goods where they are located at Salvager's sole expense. [Genco] and the Supplier *disclaim any and all express or implied warranties*,

---

[5] The Court also notes that many of the cases Shoe Metro relies upon discuss browsewrap agreements, as opposed to a clickwrap agreement, which is similar to the kind of agreement at issue here. *See Be In, Inc. v. Google Inc.*, No. 12-cv-03373-LHK, 2013 WL 5568706, at 6 n.4 (N.D. Cal. Oct. 9, 2013) (noting distinction between the two agreements). Clickwrap agreements, like Genco's, require users to actively click a radio button, checkbox, or hyperlink in order to unambiguously manifest the user's assent to the terms of the agreement. *Id.* Determining the existence of mutual assent as to browsewrap agreements is more problematic, because they purport to bind website users to terms of agreements that are merely hyperlinked to various webpages and do not contain a mechanism for the reader to make an affirmative show of assent. *See id.* at 6.

| | |
|---|---|
| 1 | including, without limitation, an implied warranty of |
| 2 | merchantability or fitness for a particular purpose. Salvager |
| 3 | acknowledges that no representations have been made by the |
| 4 | Supplier or [Genco], or relied upon by Salvager, in connection |
| 5 | with the quality, quantity or capacity of the merchandise other |
| 6 | than what may be set forth on the Bill of Lading, Notification of |
| 7 | Sal Memo, manifest or packaging slip. Some or all of the |
| 8 | merchandise may not be in usable condition. |

(Mot. 8–9 (emphasis added).) Shoe Metro argues that this provision is not an adequate disclaimer because it does not expressly disclaim the implied warranty against non-infringement. (Opp'n 12.) Shoe Metro also cites to one of the later agreements Genco references in its Motion—which includes a specific disclaimer of the implied warranty against infringement—as support for the deficiency of the Agreement. (*Id.*) First, Shoe Metro should not be permitted to object to Genco's evidence on the one hand and rely upon it with the other. (*See* ECF No. 97-5.) Second, Shoe Metro cites no authority for the proposition that when a party later amends its terms and conditions to include more robust disclaimer provisions that that necessarily means the earlier version was deficient. The lack of authority for this proposition is not surprising because (1) a contract should generally be interpreted based on its four-corners; and (2) such a finding would result in a perverse disincentive for parties to continue to clarify and improve their standard contracts and terms and conditions. Further neither party has made the necessary showing to establish that the Court should consider this parol evidence. *See Enrico Farms, Inc. v. H.J. Heinz Co.*, 629 F.2d 1304, 1306 (9th Cir. 1980) (explaining the circumstances when a court may consider parol evidence). For these reasons, the Court declines to consider these later-amended agreements.

Additionally, Shoe Metro has not shown that such a specific disclaimer is required to waive the implied warranty of non-infringement. Notably, the California

Commercial Code requires specific disclaimers for some, but not all implied warranties, including the warranty of title and merchantability. *See, e.g.*, Cal. Com. Code §§ 2312(2), 2316. Section 2312, however, does not require any specific language to disclaim the warranty against infringement. To disclaim the warranty against infringement, all that is required is a showing that the parties "otherwise agreed." Cal. Com. Code § 2312(3). Therefore, the Court finds that when the parties' agreement contains (1) an affirmative and conspicuous statement that a product is sold "AS-IS – WHERE IS" **and** (2) a disclaimer as to any and all express or implied warranties, that is sufficient to disclaim the implied warranty against infringement.

**E.     The Agreement is Not Unconscionable**

Shoe Metro argues that the Agreement is unconscionable, because California law prohibits contracts that purport to exempt anyone from responsibility for their own fraud or violation of the law. (Opp'n 13 (citing Cal. Civ. Code § 1668).) To summarize Shoe Metro's argument: The shoes Genco sold were counterfeit, which is a fraudulent act, and the Agreement is, therefore, invalid to the extent that it relieves Genco from its obligation to warrant that the products it is selling are not counterfeit. (Opp'n 14.)

There are a number of problems with Shoe Metro's argument. First, no one has alleged that Genco manufactured the allegedly counterfeit shoes, nor has there been a determination that the shoes were actually counterfeit. Shoe Metro does not even claim that Genco knowingly sold infringing shoes. Second, Shoe Metro cites no authority for its proposition that selling counterfeit goods actually amounts to fraud or that it would be the type of fraudulent conduct encompassed by section 1668. Therefore, Shoe Metro's argument is unconvincing.

Shoe Metro also argues that the Agreement is unconscionable because (1) it was not subject to negotiation and (2) it unreasonably and unexpectedly reallocates risk from Genco onto the purchaser. This argument is similarly unpersuasive. First, "commercial practicalities dictate that unbargained-for terms [should] only be denied

enforcement where they are also substantively unreasonable." *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 478, 484–87 (1982). Substantive unconscionability is an allocation of burdens and benefits which is so one-sided as to "shock the conscience." *Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1055 (2001). The terms of the Agreement do not "shock the conscience." The California Commercial Code expressly permits parties to agree to waive the implied warranty against infringement. That is what the parties have done here. For these reasons, the Court finds that the Agreement is not unconscionable.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Genco's Motion for Summary Judgment. (ECF No. 92.) All dates and deadlines in this case are hereby **VACATED**. The Court will issue a judgment.

**IT IS SO ORDERED.**

December 6, 2017

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**